# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

DEMETRIUS J ANDERSON,

     Petitioner,

v.                         CASE NO. 1:15-cv-00186-WTH-EMT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION
## AND DENYING 28 U.S.C. § 2254 PETITION

This cause comes on for consideration upon the Magistrate Judge's Report and Recommendation.  (ECF No.  27).  The parties have been furnished a copy of the Report and Recommendation and have been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1).  Plaintiff has filed objections at ECF No. 35.  I have made a de novo review based on those objections.

Having considered the Report and Recommendation, and the timely filed objections, I have determined that the Report and Recommendation should be adopted.  First, the Court agrees with the Magistrate Judge that under Florida law, proving burglary with a battery only requires that the defendant have the intent to

commit any offense at the time he enters or remains in a dwelling without

permission; it is not required that the offense intended at the time of entry or

remaining in be the actual battery which later resulted.

Also, the Court agrees that the jury could have reasonably found that

petitioner committed burglary under either the entry or remaining-in-without-

permission theories. First, evidence existed to allow the jury to conclude that

petitioner did not have permission to enter the apartment because (1) petitioner was

not on any lease or bill regarding the apartment, (2) he was only there infrequently,

(3) he knew that Ms. Bell had terminated the relationship, (4) Ms. Bell had asked

for her key back, (5) Ms. Bell had returned all of his things to his father's house,

and (6) petitioner broke down the front door when he got there. Also, the jury

could have found he had the intent to commit various offenses, such as battery,

assault or criminal mischief, at the time he entered the front door of the apartment

from the following evidence: (1) the threatening voicemail where he used the term

that she had "better" pick up her phone and promised to "act like a retard" once he

came over if she did not; (2) he broke down the front door when he got there; (3)

he angrily pounded on the bedroom door and eventually broke it down, before he

was aware that another man was there; and (4) that he threw a dresser over and

attempted to get at Ms. Bell when he was in the bedroom.

Second, the jury could have found that even if petitioner had implicit permission to enter the apartment because of the on-again-off-again nature of the relationship with Ms. Bell, the fact that he had had some possessions at her apartment, and his possession of a key, that permission had been withdrawn and petitioner remained with the intent to commit various offenses, such as battery, assault or criminal mischief. The jury could rely on the following evidence to find that the permission was withdrawn and that petitioner knew it: (1) the front door was partly barricaded with furniture the same night he had left a threatening voicemail; (2) the bedroom door was locked; and (3) Ms. Bell and Mr. Green repeatedly told him he did not belong there and that he needed to leave. Also, the jury could also conclude that he had the intent to commit various offenses at the time he remained after permission was withdrawn because of the following evidence: (1) he broke down the bedroom door immediately after failing to leave when told to do so by Ms. Bell; and (2) he threw furniture, battered Mr. Green and attempted to get at Ms. Bell immediately after entering the bedroom. Thus, it was not error to instruct the jury on both theories and evidence existed supporting either theory.

His second ground is closely related to his first. He argues that all of the state's evidence pointed only to a theory that he entered the apartment with the

intent to commit an offense, and not to a remaining-in theory. Therefore, it was

error for the judge to instruct that they could convict petitioner under either theory.

He bases this argument on a state case, *Delgado v. State*, 776 So. 2d 233 (Fla.

2000). In 2000, when *Delgado* was decided, the burglary statute defined burglary

as follows:

> "Burglary" means entering or remaining in a dwelling, a structure, or
> a conveyance with the intent to commit an offense therein, unless the
> premises are at the time open to the public or the defendant is licensed
> or invited to enter or remain.

Fla. Stat. § 810.02 (2000)(repealed 2001). Thus, in 2000, the statute did not

expressly specify whether the "remaining in" had to be surreptitious or after a

withdrawal of consent.

However, the Florida Supreme Court in *Delgado* held that such remaining-in

must be surreptitious rather than after an implicit withdrawal of consent. The

Court first reasoned that "a person would not ordinarily tolerate another person

remaining in the premises and committing a crime" and, therefore, when an invitee

to a home suddenly begins committing a crime, the host's consent would implicitly

be immediately withdrawn. *Delgado v. State*, 776 So. 2d 233, 238 (Fla. 2000).

The *Delgado* Court was thus concerned that "any crime, including misdemeanors,

committed on another person's premises would become a burglary if the owner of

the premises becomes aware that the suspect is committing the crime." *Id.*at 239.

To avoid this "absurd result," the Court held that a person who originally entered the premises with the consent of the host could only be guilty of burglary for remaining in the property if the person did so surreptitiously. *Id.*

The Court further concluded that one could not tell from the jury verdict in *Delgado* which theory – initial entry or remaining in – the jury relied upon in finding guilt. Since the *Delgado* Court had found that the remaining-in theory in that case was legally invalid, the Court could therefore not discern whether the jury had found guilt based on a legally invalid theory. Therefore, the Court vacated the conviction and remanded the case for retrial. *Id.*

However, in 2001, the legislature revised Fla. Stat. § 810.02 with the express intent to undo *Delgado*:

> The Legislature finds that the case of *Delgado v. State*, Slip Opinion No. SC88638 (Fla. 2000) was decided contrary to legislative intent and the case law of this state relating to burglary prior to *Delgado v. State*. The Legislature finds that in order for a burglary to occur, it is not necessary for the licensed or invited person to remain in the dwelling, structure, or conveyance surreptitiously.

Legislative Findings, 2001 Fla. Sess. Law Serv. Ch. 2001-58 (H.B. 953) (WEST). The legislature revised § 810.02 to the following, which was in effect at the time of the instant offense:

> (b) For offenses committed after July 1, 2001, "burglary" means:
> 1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the

public or the defendant is licensed or invited to enter; or
2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
>  a. Surreptitiously, with the intent to commit an offense therein;
>  b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or
>  c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.

Fla. Stat. § 810.02 (2016).

Thus, § 810.02(b)(2)(b), after the 2001 amendment, specifically provided that remaining in a home after permission had been withdrawn, with the intent to commit an offense, constituted burglary. Therefore, unlike *Delgado,* neither of the theories presented to the jury in this case – entering-in or remaining-in – was legally invalid. In fact, the evidence supported both theories in this case and the remaining-in theory was supported by Ms. Bell's explicit withdrawal of any permission to be there, rather than the type of implied withdrawal which concerned the *Delgado* court. Thus, it was not error for the state court in this case to instruct the jury that either theory supported a finding of guilt in this case. Petitioner's second ground therefore is without merit.

In his third ground, petitioner argues that his counsel was ineffective for failing to advise him to accept a 66-month plea offer from the state. Instead, petitioner claims, counsel failed to inform petitioner of the strength of the case against him and advised that petitioner could not be convicted of burglary because

petitioner had personal belongings in Ms. Bell's apartment at the time he entered it. Therefore, petitioner claims that counsel advised that he should reject the state's plea offer.

The state court judge, after hearing the testimony of defense counsel and the prosecutor, rejected petitioner's claim that his counsel advised against accepting the plea agreement. Defense counsel testified that, while he presented the ongoing-relationship theory as a potentially viable defense to the burglary charge, he also advised petitioner that he could not guarantee any results at trial, that petitioner potentially faced life imprisonment, and that, therefore, petitioner should accept the 66-month plea offer. Defense counsel testified that petitioner stated he had a hard time pleading guilty after hiring and paying an attorney because he had done the same thing in a prior case and still was sentenced to six years imprisonment. Petitioner told his counsel he wanted an attorney who would advocate for him and take his case to trial. The prosecutor testified that defense counsel told him at the time that he tried to convince petitioner to plead guilty but that petitioner was refusing because the state's offer was still 66 months even after he had retained counsel.

As the Magistrate Judge recommends, nothing in the record or petitioner's arguments suggests that the state judge's findings -- that defense counsel advised

petitioner to accept rather than reject the plea -- were unreasonable. Also, the state court was not unreasonable in finding that defense counsel adequately explained the strength of the government's case and the level of viability of the ongoing-relationship defense. Therefore, petitioner's third ground has no merit.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.     The Magistrate Judge's Report and Recommendation, ECF No. 27, is adopted and incorporated by reference in this order.

2.     The Clerk is directed to enter the following judgment: "The petition for writ of habeas corpus, ECF No. 1, is DENIED, and a certificate of appealability is DENIED."

3.     The Clerk is directed to close the file.

**DONE AND ORDERED** this *23rd* day of January, 2018

UNITED STATES DISTRICT JUDGE